<u>Not for Publication</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

HOTALING & CO., LLC and SANNITI LLC,

*Plaintiffs,*

v.

LY BERDITCHEV CORP.,

*Defendant.*

Civil Action No. 20-cv-16366

<u>OPINION</u>

**John Michael Vazquez, U.S.D.J.**

This case concerns Defendant's alleged unlawful importation and sale of certain cherries. This matter comes before the Court by way of Defendant's motion to dismiss. D.E. 9. The Court reviewed the parties' submissions[1] in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is denied.

**I.    BACKGROUND**

Plaintiff Hotaling & Co., LLC ("Hotaling") is a California limited liability company and is the exclusive United States importer of Luxardo brand food products. D.E. 1 ("Compl.") ¶ 2. Plaintiff Sanniti LLC ("Sanniti") is a New Jersey limited liability company and is an authorized distributor of Luxardo brand food products. *Id*. ¶ 3. Defendant is a New York corporation with its principal place of business at 95 High Street, Passaic, New Jersey 07055. *Id*. ¶ 4.

The parties dispute concerns "LUXARDO ORIGINAL MARACHINO CHERRIES" (the "Brand Cherries"). *Id*. ¶ 9. The Brand Cherries are "high-end candied cherries manufactured in

---

[1] Defendant's brief in support of its motion to dismiss, D.E. 9-1 ("Br."); Plaintiffs' brief in opposition, D.E. 13 ("Opp."); and Defendant's reply brief in further support of its motion to dismiss, D.E. 15 ("Reply").

Italy." *Id*. Girolamo Luxardo S.P.A. ("GLS") manufactures the Brand Cherries and owns all Luxardo trademarks, including U.S. Trademark Registration No. 4460894 covering the design of the Brand Cherries' front label. *Id*. ¶ 10. GLS granted Hotaling the exclusive right to import, supply, and market Luxardo Brand Cherries in the United States. *Id*. ¶ 11. Sanniti, through its relationship with Hotaling, is an authorized distributor of Luxardo Brand Cherries. *Id*. ¶ 12. Plaintiffs allege that Defendant has imported, distributed, marketed, and sold large quantities of Brand Cherries not intended or authorized for sale in the United States (the "Unauthorized Brand Cherries"). *Id*. ¶ 19.

Plaintiffs claim the Unauthorized Brand Cherries are materially different from the Brand Cherries. *Id*. ¶ 21. Specifically, Plaintiffs claim that Brand Cherries authorized for importation and sale in the United States bear a "prominent legend" identifying Hotaling as the importer and display certain required labeling. *Id*. ¶ 10. Brand Cherries authorized for importation and sale in other markets do not include such labelling. *Id*. ¶ 15. Plaintiffs indicate that the Unauthorized Brand Cherries "bear Italian-language labels and packaging that do not comply with United States labeling laws." *Id*. ¶ 22. Further, the Unauthorized Brand Cherries' labels "do not include the name and contact information for Hotaling." *Id*. ¶ 23. Defendant has sold the Unauthorized Brand Cherries at prices "materially lower" than the Brand Cherries. *Id*. ¶ 20.

Plaintiffs claim Defendant's marketing and sale of the Unauthorized Brand Cherries infringes GLS's rights and constitutes unfair competition with GLS, Hotaling, Sanniti, and other authorized sellers of the Brand Cherries. *Id*. ¶ 26. Plaintiffs have used informal efforts to notify Defendant of their objections, *id*. ¶¶ 28-29, and Plaintiffs indicate that Defendant is aware of Plaintiffs' rights as exclusive distributors of the Brand Cherries. *Id*. ¶ 27. On October 20, 2020, Hotaling sent Defendant's counsel a formal cease and desist letter detailing the alleged unlawful

conduct. *Id*. ¶ 30. Defendant nevertheless continued to market and sell the Unauthorized Brand Cherries. *Id*.

On November 17, 2020, Plaintiffs filed their Complaint, bringing claims for (1) "Federal Unfair Competition Under 15 U.S.C. § 1125(a)" and (2) "Common Law Unfair Competition." *Id*. ¶¶ 31-38. The present motion followed; Defendant argues that Plaintiffs lack standing and failed to join a necessary party. D.E. 9.

## II.     STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(1)

In deciding a Fed. R. Civ. P. 12(b)(1) motion as to lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed. A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). As to a facial attack, the 12(b)(1) motion is treated "like a 12(b)(6) motion" and the Court must "consider the allegations of the complaint as true." *T.L. by & through Latisha G. v. Pennsylvania Leadership Charter Sch.*, 224 F. Supp. 3d 421, 429 (E.D. Pa. 2016) (citing *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016)).[2] Factual attacks, in contrast, argue that subject-matter jurisdiction is improper

---

[2] Because the standard for a facial challenge under Rule 12(b)(1) is treated "like a Rule 12(b)(6) motion to dismiss," *Mrs. World LLC v. Johnson*, No. CV21928JMVJBC, 2021 WL 3400863, at *3 (D.N.J. Aug. 4, 2021) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)), the Court need not resolve the parties' dispute over whether the standard under Rule 12(b)(1) and Rule 12(b)(6) applies. *See* Opp. at 5-6.

"because the facts of the case . . . do not support the asserted jurisdiction." *Evanston*, 2019 WL 1916203, at *2 (quoting *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  As to factual attacks, courts are permitted "to weigh and consider evidence 'outside the pleadings' to decide whether subject matter jurisdiction is proper."  *Id*.  Regardless of whether the attack is facial or factual, "the Plaintiff has the burden to prove that the Court has jurisdiction." *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

Here, Defendant raises a facial attack.[3]

### B. Fed. R. Civ. P. 12(b)(7)

Under Fed. R. Civ. P. 12(b)(7), a court may dismiss an action for "failure to join a party under Rule 19."  Fed. R. Civ. P. 19 "sets out the circumstances under which it is necessary to join an absent party and, if joinder of that party is not feasible, the factors for determining whether the absent party is indispensable to the action."  *US Tech Sols., Inc. v. eTeam, Inc.*, No. CV 17-1107-SDW-LDW, 2017 WL 3535022, at *2 (D.N.J. Aug. 16, 2017).  "[I]n pursuing a Rule 12(b)(7) motion to dismiss, the moving party bears the burden of showing that the absent party is both necessary and indispensable under Rule 19."  *Id*.  (citing *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)).  "In considering a motion under Rule 12(b)(7), the court must accept the factual allegations in the complaint as true and view those

---

[3] In its reply brief, Defendant attacks the veracity of Plaintiffs' allegations.  Reply at 8-10.  However, the Court does not consider arguments raised for the first time in reply.  *Cobra Enterprises, LLC v. All Phase Servs., Inc.*, No. CV 20-4750 (SRC), 2020 WL 2849892, at *1 (D.N.J. June 1, 2020) ("[T]his Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Plaintiffs have not had the opportunity to respond to them.").

allegations in the light most favorable to the non-moving party." *Id*. However, "when making a determination pursuant to Federal Rule of Civil Procedure 19, a court may consider evidence outside of the pleadings." *M&B IP Analysts, LLC v. Cortica-US, Inc.*, No. CV190429ESSCM, 2020 WL 3411027, at *2 (D.N.J. June 22, 2020) (citing *Mediterranean Shipping Co. (USA) Inc. v. Shandex Corp.*, No. CV 16-2595-CCC-JBC, 2017 WL 1129593, at *2 (D.N.J. Mar. 23, 2017)).

### III. ANALYSIS

#### A. Standing

Defendant argues that the matter should be dismissed because it is unclear whether the relevant agreements between GLS, Hotaling, and Sanniti permit Plaintiffs to bring suit. Br. at 8-9; s*ee also* Reply at 3. Defendant claims that "[t]he line that separates the licensees with standing [to bring trademark claims] from the licensees without standing is drawn by the language of the contract." Br. at 7. Defendant further contends that because "[t]he Complaint fails to attach the relevant agreements or even allege that Plaintiffs have the rights necessary to bring this suit" the matter should be dismissed. *Id*. at 8. Plaintiffs respond that they have properly alleged standing, citing to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 120 (2014).

Plaintiffs assert a claim under 15 U.S.C. § 1125(a). That section provides as follows:

> (a) Civil action
>
> > (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> >
> > > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Defendant attacks Plaintiffs' ability to bring "a *trademark infringement* claim." Reply at 3 (emphasis added); Br. at 6 ("[T]he terms of the license agreement control whether licensees have standing to file their own action for *trademark infringement* under Section 43(a)."). However, the Complaint asserts a claim for unfair competition under 15 U.S.C. § 1125(a). Compl. ¶¶ 31-34; *see also Lexmark*, 572 U.S. at 122 ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."). Section 1125(a) permits "*any person* who believes that he or she is likely to be damaged" by the prescribed conduct to bring a civil action. 15 U.S.C. § 1125(a) (emphasis added). "Courts have consistently recognized that this broad language confers standing on trademark licensees." *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 CIV. 5408 (THK), 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001) (finding that the plaintiff licensee lacked standing to assert infringement claim under Section 32 of the Lanham Act, 15 U.S.C. 1114(1), but that the plaintiff had standing to assert a claim under Section 1125(a)); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977); *see also Thursday LLC v. DNVB, Inc.*, No. 20 CIV. 9142 (AKH), 2021 WL 2689061, at *3 (S.D.N.Y. June 29, 2021) (permitting the plaintiff to sue under Section 1125(a)); *Puma Energy Caribe, LLC v. Riollano-Caceres*, CIVIL NO. 14-1790, 2017 WL 11607783 at *6 (D.P.R. Dec. 14, 2017) ("[T]he mere fact that Plaintiff may not be neither the federally registered owner nor an exclusive licensee does not necessarily preclude Plaintiff from having standing to sue under

6

Section 1125(a)."); *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. CIV. 08-3529 (WHW), 2009 WL 2255727, at *9 (D.N.J. July 27, 2009) (rejecting the defendant's argument that "only mark owners and exclusive licensees" have standing to sue under section 1125(a)).

In *Lexmark*, the Supreme Court established a two-prong test to determine whether a plaintiff has standing to sue under section 1125(a). *Lexmark*, 572 U.S. at 118. "The critical inquiry is whether the plaintiff 'falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a).'" *Jiaherb, Inc. v. MTC Indus., Inc.*, No. CV1815532KSHCLW, 2019 WL 4785784, at *2 (D.N.J. Sept. 30, 2019) (quoting *Lexmark*, 572 U.S. at 128). First, the plaintiff's interests must "fall within the zone of interests protected by the law invoked." *Id.* (citing *Lexmark*, 572 U.S. at 128). Thus, a plaintiff bringing a section 1125(a) false advertising claim "must allege an injury to a commercial interest in reputation or sales." *Id.* (quoting *Lexmark*, 572 U.S. at 131-32). Second, the plaintiff must demonstrate that its injuries were proximately caused by a violation of the statute. *Id.* (citing *Lexmark*, 572 U.S. at 132). Thus, a plaintiff suing under section 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* (quoting *Lexmark*, 572 U.S. at 133).

Plaintiffs' allegations are sufficient. The allegations give rise to a plausible inference that Defendant's conduct has and will create confusion among consumers as to Defendant's connection to Plaintiffs and GLS, such as whether Plaintiffs and GLS have approved or sponsored Defendant's sale of the Unauthorized Brand Cherries. *See e.g.*, Compl. ¶¶ 19-25. Plaintiffs and Defendant are competitors because they both sell and distribute the cherries at issue. And the Complaint further alleges that Defendant's labels lack required information, potentially causing damage to Plaintiffs' reputation. *Id.* ¶ 22-23; *id.* ¶¶ 15-16. In addition, Plaintiffs create a reasonable inference that

7

Defendant's sale of the Unauthorized Brand Cherries "at prices materially lower than" the Brand Cherries, *id*. ¶ 20, harmed Plaintiffs' sales. In fact, Defendant does not contest that Plaintiffs meet the requirements under *Lexmark*. *See* Reply at 7-8.

Defendant cites to *Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc*, No. CV 16-1185 (RBK/JS), 2017 WL 396539, at *1 (D.N.J. Jan. 30, 2017). In *Tony Luke*, the Court dismissed infringement claims under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), and Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for lack of standing. *Id*. at *2-4. In that matter, however, the plaintiff was contractually prohibited from suing third parties. *Id*. at *3. Nonetheless, Judge Kugler still acknowledged that section 1125(a) "allows a broader range of parties to institute civil actions to protect use of trademarks." *Id*. at *4. But Judge Kugler dismissed the section 1125(a) claim because the "the express terms of the license prohibited [the plaintiff] from bringing suit in [its] own capacity." *Id*. Here, conversely, there are no allegations in the Complaint indicating that Plaintiffs are contractually prohibited from bringing actions under section 1125(a) against third parties.

For the same reason, *O.O.C. Apparel, Inc. v. Ross Stores, Inc.*, No. CIV A 04-6409 PGS, 2007 WL 869551, at *3 (D.N.J. Mar. 20, 2007) and *Fin. Inv. Co. (Bermuda) v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998), are inapposite. As in *Tony Luke*, the plaintiffs in *O.O.C.* and *Fin. Inv. Co.* were both contractually prohibited from pursuing their unfair competition claims. *Fin. Inv. Co. (Bermuda)*, 165 F.3d at 532; *O.O.C. Apparel, Inc.*, No. CIV A 04-6409 PGS, 2007 WL 869551, at *4. Significantly, however, both of those cases acknowledged "§ 43(a) confers a right to sue on a broader range of plaintiffs than § 32(1)." *Fin. Inv. Co. (Bermuda)*, 165 F.3d at 532; *see also O.O.C. Apparel, Inc.*, No. CIV A 04-6409 PGS, 2007 WL 869551, at *3 ("[T]he mere

fact that OOC was a non-exclusive licensee did not bar its claim for unfair competition under Section 43(a) of the Lanham Act.").

*Drew Est. Holding Co., LLC v. Fantasia Distribution, Inc.*, 875 F. Supp. 2d 1360, 1362 (S.D. Fla. 2012) is also distinguishable.  There, although the plaintiff brough a claim under section 1125(a), the Court primarily analyzed trademark infringement under 15 U.S.C. § 1114(1)(a). *Id*. at 1365 ("Under the Lanham Act, a defendant is liable for *trademark infringement*[.]") (emphasis added)); *id*. at 1366 ("[a] licensee's standing to bring *a trademark infringement* claim[.]" (emphasis added)).  The *Fantasia* court did not discuss standing under section 1125(a).

For the foregoing reasons, Defendant's motion to dismiss for lack of standing is denied.

### B. Failure to Join a Necessary and Indispensable Party

Defendant next argues that GLS, "the owner of the Luxardo Marks," is a required party who must be joined under Fed. R. Civ. P. 19.  Br. at 9-12.  In relevant part, Rule 19 provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>
>> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>
>>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>
>>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>>
>> (2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party.

9

> A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
>
> (3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.
>
> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > (2) the extent to which any prejudice could be lessened or avoided by:
> >
> > > (A) protective provisions in the judgment;
> > > (B) shaping the relief; or
> > > (C) other measures;
> >
> > (3) whether a judgment rendered in the person's absence would be adequate; and
> >
> > (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19.

In conducting a Rule 19 analysis, a court first "must determine whether the absent [party] should be joined as [a] 'necessary' part[y] under Rule 19(a)." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). If the party should be joined "but [its] joinder is not feasible inasmuch as it would defeat diversity of citizenship" the Court "next must determine whether the absent part[y] [is] 'indispensable' under Rule 19(b)." *Id*. If the party is deemed indispensable under Rule 19(b) "the action cannot go forward." *Id*.; *see also Sun Chem. Corp. v. Am. Home Assurance Co.*, No. CV 20-6252 (SRC), 2020 WL 5406171, at *5 (D.N.J. Sept. 9, 2020) ("If joinder is required under Rule 19(a) but is not feasible, for instance because joinder

would destroy diversity jurisdiction, the court must determine whether the non-joined party is indispensable under Rule 19(b)." (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d at 312)).

Defendant has failed to show that GLS cannot feasibly be joined. *Sun Chem. Corp.*, No. CV 20-6252 (SRC), 2020 WL 5406171, at *5. The Court only decides whether "the action should proceed among the existing parties or should be dismissed" under Rule 12(b)(7) *after* determining that a required party's "joinder is not feasible[.]" *Gen. Refractories Co.*, 500 F.3d at 312; Fed. R. Civ. P. 19(b). Here, Defendant does not show why GLS cannot be joined in this matter, so its motion is denied.[4]

Defendant has also failed to demonstrate that GLS is a required party under Rule 19(a). Defendant does not cite any binding authority in support of its arguments. Instead, Defendant contends that "[t]rademark owners are indispensable for Rule 19 purposes in *infringement actions*." Br. at 9 (emphasis added). Even if this argument was accurate, it misses the mark because Plaintiffs are asserting unfair competition claims under section 1125(a), not an infringement action.

Defendant argues that GLS is required under Rule 19(a)(1)(B)(i) because it claims an interest in its marks and "the validity of the Luxardo Marks will be challenged by LYB, which will necessarily affect Luxardo's rights and interests." Br. at 10. However, "the mere possibility of issue preclusion is not enough to satisfy Rule 19(a)(1)(B)." *Pittsburgh Logistics Sys., Inc. v. C.R.*

---

[4] The Court notes that Defendant also failed to discuss or analyze the factors under Rule 19(b). *See* Br. at 12. Thus, even if Defendant had shown that GLS's joinder is not feasible, the motion to dismiss would still be denied for Defendant's failure to meet its burden to show that GLS is "indispensable under Rule 19(b)." *Gen. Refractories Co.* 500 F.3d at 312 (internal quotation marks omitted).

11

*England, Inc.*, 669 F. Supp. 2d 613, 620 (W.D. Pa. 2009) (citing *Huber v. Taylor*, 532 F.3d 237, 251 (3d Cir. 2008) ("[W]here the preclusive effect of an action on any related litigation is speculative, joinder of an absent party is not compulsory.")).  Defendant's discussion about the potential preclusive effect of a decision in this matter on GLS is speculative and conclusory; Defendant does not provide a substantive preclusion analysis.  Moreover, Plaintiff's Complaint does not question the validity of the marks.  Based on the current record, Defendant has not shown that proceeding without GLS will "impair or impede [GLS]'s ability to protect [its] interest" in its trademarks.  Fed. R. Civ. P. 19(a)(1)(B)(i).[5]

Without specifying which subsection of Rule 19 it is availing itself of, Defendant next argues that "[a] review of the relief sought by the Plaintiffs further confirms that joinder of Luxardo is necessary."  Br. at 10.  Defendant continues that "Luxardo may have had excess stock of the products at issue and authorized their sale abroad."  *Id*. at 11.  This argument is speculative and not based on the allegations in the Complaint.  In addition, Defendant fails to demonstrate how this information is relevant to the Rule 19 analysis.  In support of this argument, Defendant cites to *Lion Petroleum of Missouri, Inc. v. Millennium Super Stop, LLC*, 467 F. Supp. 2d 953, 954 (E.D. Mo. 2006).  *Lion* is inapposite because the motion to join only "ha[d] merit with respect to the *infringement claims* involving ConocoPhillips' trademarks."  *Id*. at 956. (emphasis added).

Defendant next claims that "the Court will be unable to provide complete relief to the current parties" because "Plaintiffs seek 'an accounting of [Defendant's] sales and profits.'"  Br. at 11. The Court disagrees with this conclusory argument.  If Plaintiff is successful, the Court will be able to award Plaintiffs an accounting of Defendant's sales and profits without GLS's joinder.

---

[5] The Court notes that GLS has not independently asserted that it has an interest in this matter.

Defendant appears to make an argument under Rule 19(a)(1)(B)(ii), when it argues that "[a]bsent joinder of Luxardo, Luxardo *could* file a separate lawsuit seeking the same relief." Br. at 11 (emphasis added). That subsection holds that a party is required where "it claims an interest relating to the subject of the action" and its non-joinder may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Defendant's sentence-long argument as to Rule 19(a)(1)(B)(ii) is conclusory and speculative. "[A]n unsubstantiated or speculative risk will not satisfy Rule 19(a) criteria -- the possibility of exposure to multiple or inconsistent obligations must be real." *Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 145 (3d Cir. 2010).

For the foregoing reasons, Defendant's motion to dismiss under Rule 12(b)(7) is denied.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss, D.E. 9, is denied. An appropriate Order accompanies this Opinion.

Dated: August 26, 2021

_____
John Michael Vazquez, U.S.D.J.
