Mark Berkowitz (Bar No. 232472017)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel.:     (212) 216-8000
Fax:     (212) 216-8001
E-mail: mberkowitz@tarterkrinsky.com
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOTALING & CO., LLC and SANNITI LLC,<br><br>              Plaintiffs,<br><br>     v.<br><br>LY BERDITCHEV CORP.,<br><br>              Defendant. | Case No. 2:20-cv-16366-JMV-JBC<br><br><u>Assigned to:</u><br>Judge John Michael Vazquez<br>Magistrate Judge James B. Clark<br><br><u>Motion Date</u>: January 3, 2022<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' PARTIAL MOTION TO DISMISS CERTAIN COUNTERCLAIMS AND STRIKE AN AFFIRMATIVE DEFENSE** |
| LY BERDITCHEV CORP.,<br><br>              Counterclaimant,<br><br>     v.<br><br>HOTALING & CO., LLC; SANNITI LLC; and GIROLAMO LUXARDO S.P.A.<br>              Counterclaim-Defendants. | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  FACTUAL BACKGROUND.................................................................2

    A.   The Parties ..................................................................................2

    B.   Plaintiffs Interfere in Defendant's Sales of Genuine Luxardo
        Products ........................................................................................3

III. LEGAL STANDARDS .........................................................................5

IV.  PLAINTIFFS' MOTION SHOULD BE DENIED ................................6

    A.   Defendant Has Stated a Claim for Tortious Interference.....................6

        1.   Defendant Has Stated a Claim for Tortious Interference
             with Contract..............................................................................6

        2.   Defendant Has Stated a Claim for Tortious Interference
             with Business Relations .............................................................10

    B.   Defendant Has Stated a Claim for Defamation...................................12

    C.   Plaintiffs' False Reports to Amazon Are Not Privileged or
        Protected ......................................................................................14

        1.   The Litigation Privilege Is Inapplicable ...................................14

        2.   The Common Interest Privilege Is Also Inapplicable..............17

    D.   Plaintiffs' Attempt to Strike the "First Sale" Defense Is
        Unsupported .................................................................................19

V.   CONCLUSION.....................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AlphaCard Sys. LLC v. Fery LLC*,
    No. 19-20110 (MAS) (TJB),
    2021 WL 2190901 (D.N.J. May 31, 2021)............................................7, 8, 9, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................5

*Beauty Beauty USA, Inc. v. Chin Hong Luo*,
    No. 11 CIV. 5349 LAK,
    2011 WL 4952658 (S.D.N.Y. Oct. 13, 2011).....................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................5

*Bello v. United Pan Am Fin. Corp.*,
    No. CV 19-9118,
    2021 WL 2549243 (D.N.J. June 22, 2021).......................................15

*Corning Inc. v. SRU Biosystems, LLC*,
    292 F. Supp. 2d 583 (D. Del. 2003)................................................11

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
    No. 03-1026,
    2007 WL 4554208 (D.N.J. Dec. 21, 2007),
    *aff'd*, 552 F. App'x 110 (3d Cir. 2014)............................................15

*El-Ghazzawy v. Berthiaume*,
    708 F. Supp. 2d 874 (D. Minn. 2010),
    *aff'd*, 636 F.3d 452 (8th Cir. 2011)............................................12, 13

*Food Scis. Corp. v. Nagler*,
    No. CIV.09-1798 (JBS),
    2010 WL 1186203 (D.N.J. Mar. 22, 2010) .....................................21

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...........................................................5

*Hawkins v. Harris*,
661 A.2d 284 (N.J. 1995) ....................................................................................14

*Iberia Foods Corp. v. Romeo*,
150 F.3d 298 (3d Cir. 1998) ............................................................2, 19, 20, 21

*JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*,
No. 18-5221 (ES) (SCM),
2019 WL 1951123 (D.N.J. May 2, 2019).....................................................*passim*

*Lamorte Burns & Co., Inc. v. Walters*,
770 A.2d 1158 (N.J. 2001) ....................................................................................7

*Lontex Corp. v. Nike, Inc.*,
384 F. Supp. 3d 546 (E.D. Pa. 2019)....................................................................4

*Malibu Media, LLC v. Does 1*,
No. CIV.A. 12-2078,
2013 WL 1702549 (E.D. Pa. Mar. 6, 2013) ......................................................21

*Microsoft Corp. v. Worth*,
No. CIV A 306-CV-2213-G,
2007 WL 1975574 (N.D. Tex. July 5, 2007)......................................................21

*Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*,
No. CV 18-17228,
2020 WL 7061085 (D.N.J. July 14, 2020) .......................................................5, 6

*Ontel Prods. Corp. v. Zuru Ltd.*,
No. 17-cv-3658 (PGS)(LHG),
2017 WL 4444198 (D.N.J. Oct. 4, 2017) ...........................................................16

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*,
118 F. Supp. 3d 646 (D.N.J. 2015)......................................................................16

*Phillips v. Cty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .................................................................................5

*Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp.*,
642 F. Supp. 2d 391 (D.N.J. 2009).................................................................17, 18

*Rockwell Automation, Inc. v. Radwell Int'l, Inc.*,
  No. CV 15-05246 (RBK/JS),
  2019 WL 7288946 (D.N.J. Dec. 30, 2019)........................................................20

*Salon Supply Store, LLC v. Creative Nail Design, Inc.*,
  No. 14-CV-01083-BAS(RBB),
  2015 WL 11438492 (S.D. Cal. June 19, 2015) ............................................9, 11

*Shionogi Pharma., Inc. v. Mylan, Inc.*,
  No. 10–1077,
  2011 WL 3860680 (D. Del. Aug. 31, 2011)......................................................16

*Source Entm't Grp. v. Baldonado & Assocs., P.C.*,
  No. 06-2706,
  2007 WL 1580157 (D.N.J. May 31, 2007).........................................................15

*TD Bank, N.A. v. Hill*,
  No. CIV. 12-7188 RBK/JS,
  2014 WL 413525 (D.N.J. Feb. 3, 2014) ............................................................16

*Tipton v. U-Go, Inc.*,
  No. A-1543-12T3,
  2014 WL 4231363 (N.J. Super. Ct. App. Div. Aug. 28, 2014)...........................6

*TP Link USA Corp. v. Careful Shopper LLC*,
  No. 8:19-cv-00082-JLS-KES,
  2020 WL 3063956 (C.D. Cal. Mar. 23, 2020)...................................................16

*Trans USA Prod., Inc. v. Howard Berger Co., Inc.*,
  No. 07-cv-5924,
  2008 WL 3154753 (D.N.J. Aug. 4, 2008) .........................................................10

*Wilco Trading LLC v. Shabat*,
  No. 8:20-CV-579-TPB-JSS,
  2021 WL 1146634 (M.D. Fla. Mar. 8, 2021),
  *adopted*, 2021 WL 1140097 (M.D. Fla. Mar. 25, 2021). ..................................13

*Williams v. Bell Tel. Labs., Inc.*,
  623 A.2d 234 (N.J. 1993) .................................................................................18

*Williams v. Kenney*,
  877 A.2d 277 (N.J. Super. App. Div. 2005) .....................................................17

**Statutes and Rules**

15 U.S.C. § 1064(3) ...................................................................................................5

15 U.S.C. § 1116(d)(1)(B)(ii) ...................................................................................4

15 U.S.C. § 1125(a) ...................................................................................................3

15 U.S.C. § 1127 ........................................................................................................4

Fed. R. Civ. P. 12(b)(6) .............................................................................................5

Fed. R. Civ. P. 12(f) ..................................................................................................5

Defendant/Counterclaimant LY Berditchev Corp. ("Defendant") submits this Opposition to Plaintiffs/Counterclaim-Defendants Hotaling & Co., LLC ("Hotaling") and Sanniti LLC ("Sanniti") (collectively, "Plaintiffs") Motion to Dismiss Certain Counterclaims and Strike an Affirmative Defense (ECF No. 27, "Motion").

## I. INTRODUCTION

This case relates to the sale of candied cherries—the kind that you might find in a cocktail.  Specifically, Plaintiffs claim that Defendant has violated the Lanham Act and state law by selling certain candied cherries that are not "authorized" for sale in the United States.  Defendant disputes those allegations and counters that Plaintiffs are attempting to manipulate the pricing of these products through unlawful means—Plaintiffs now seek to dismiss those Counterclaims.

The cherries at issue are manufactured in Italy by Girolamo Luxardo S.P.A. ("Luxardo")[1] and sold throughout the world.  The difference between the Luxardo cherries sold in the U.S. versus those sold in elsewhere in the world is price.  In Europe, for example, the 14.1oz jar of these cherries retails for the equivalent of $9.  But, in the U.S., consumers pay $25 for the same jar.  This discrepancy is the result of Plaintiffs' illegal actions—if a competitor (e.g., Defendant) attempts sell Luxardo

---

[1] Luxardo is the third counterclaim-defendant.  Luxardo has been served with process but has not yet appeared.

cherries in the U.S., Plaintiffs bombard that competitor's retail partners (e.g., Amazon) with bogus intellectual property claims. Here, Plaintiffs falsely reported to Amazon that Defendant was selling "counterfeit" (i.e., fake) Luxardo cherries so that Amazon would revoke Defendant's ability to sell these products.

Accordingly, Defendant has brought claims for defamation and tortious interference. Plaintiffs' Motion, seeking to dismiss these claims, is baseless. As detailed below, Plaintiffs' arguments are based on facts outside the pleadings—Plaintiffs completely ignore Defendant's actual allegations.

Plaintiffs also ask the Court to "strike" any reference by Defendant to the "first sale" doctrine. But, Plaintiffs' case turns entirely on whether ***Plaintiffs*** can successfully invoke an exception to this doctrine. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 (3d Cir. 1998). Thus, the first sale doctrine is at the heart of this case.

For these reasons, and those discussed below, Plaintiffs' Motion should be denied.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Defendant is a distributor of a wide variety of consumer products and a top seller on the Amazon.com marketplace. Among the thousands of products that it stocks and sells, Defendant carries candied cherries (also known as "Maraschino" cherries) manufactured by Luxardo ("Luxardo Cherries"). These cherries, which are

imported from Italy, are sold in their original factory packaging, namely, sealed glass jars.

The Complaint alleges that "All LUXARDO trademarks," including "U.S. Trademark Registration No. 4460894 covering the design of the LUXARDO maraschino cherries front label," are owned by Luxardo.  (ECF No. 1, "Compl." ¶ 10.)  According to the Complaint, Plaintiff "Hotaling is the exclusive U.S. importer of LUXARDO brand food products, including the maraschino cherries that are the subject of this action" and Plaintiff "Sanniti is an authorized distributor of LUXARDO brand food products, including the maraschino cherries that are the subject of this action."  (*Id.* ¶¶ 2–3.)

### B.  Plaintiffs Interfere in Defendant's Sales of Genuine Luxardo Products

The Complaint purports to state a claim for: (1) unfair competition under 15 U.S.C. § 1125(a); and (2) common law unfair competition.  Specifically, Plaintiffs allege that the Luxardo Cherries sold by Defendant are labelled differently than those sold by Plaintiffs.  (Compl. ¶¶ 19–23.)

Buried in their Complaint, Plaintiffs identify the true motivation for their Complaint—they are unhappy that Defendant is selling Luxardo Cherries below the price that Plaintiffs have conspired to maintain.  (*See* Compl. ¶ 20 ("Defendant has sold the Unauthorized Luxardo Brand Cherries *at prices materially lower* than the Luxardo Brand Cherries intended and authorized for sale in the United States.")

(emphasis added).)  In other words, Plaintiffs seek to maintain the prices for Luxardo Cherries in the United States at prices higher than they are available elsewhere.  As noted, Luxardo Cherries retail in the UK for £6.99 (about $9.30).[2]  In the U.S., Plaintiff Sanniti sells this same item on Amazon (under the DBA "JF Distributions") for $25.

Plaintiffs note that, prior to filing the Complaint, "Sanniti has sent multiple complaints to Amazon requesting that Defendant's listings for [Luxardo] Cherries be removed."  (Compl. ¶ 29).  But Plaintiffs neglect to mention that were so determined to eliminate lower-priced competition that they reported to Amazon that Defendant was selling "counterfeit" Luxardo cherries.  (ECF No. 24, "Countercl." ¶ 47.)  Plaintiffs concede that Defendant's products were in fact manufactured by Luxardo, i.e., they are not fakes.  (Compl. ¶¶ 19–20.)[3]

Accordingly, Defendant has brought counterclaims against Luxardo, Hotaling and/or Sanniti for: (1) a declaratory judgment of no infringement (Count I); (2) tortious interference with contract and business relations (Count II);

---

[2] https://www.lakeland.co.uk/61272/Luxardo-Maraschino-Cherries-400g.

[3] A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; 15 U.S.C. § 1116(d)(1)(B)(ii); *see also Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 555 (E.D. Pa. 2019) (noting that "spurious" has been defined as "deceptively suggesting an erroneous origin, fake") (internal quotations and modifications omitted).

(3) defamation (Count III); and (4) trademark cancellation pursuant to 15 U.S.C. § 1064(3) (Count IV).

Here, Plaintiffs have moved to dismiss Counts II and III, and strike Defendant's "first sale" defense.

## III.   LEGAL STANDARDS

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Motions to strike defenses [under Rule 12(f)] are evaluated under the same standards as motions to dismiss under Rule 12(b)(6)." *Nissan Motor Acceptance*

*Corp. v. Infiniti of Englewood, LLC*, No. CV 18-17228, 2020 WL 7061085, at *9 (D.N.J. July 14, 2020).  "Motions to strike are disfavored, and a court should only strike a defense if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *Id.* (internal quotations omitted).

## IV. PLAINTIFFS' MOTION SHOULD BE DENIED

### A. Defendant Has Stated a Claim for Tortious Interference

Plaintiffs have moved to dismiss Defendant's claim of tortious interference with contract and business relations.  Plaintiffs' arguments follow a consistent pattern—they state the elements of the cause of action, ignore the factual allegations of the Counterclaims, and then argue that the claim cannot succeed for reasons outside of the pleadings.

#### 1. Defendant Has Stated a Claim for Tortious Interference with Contract

A claim of tortious interference with a contract requires a plaintiff to allege: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *Tipton v. U-Go, Inc.*, No. A-1543-12T3, 2014 WL 4231363, at *5 (N.J. Super. Ct. App. Div. Aug. 28, 2014).

Defendant alleges that: Defendant had a contractual relationship with Amazon, which allows Defendant to sell products on the Amazon marketplace

(Countercl. ¶¶ 20, 86); Plaintiffs were aware of the contractual relationship and intentionally interfered with the contract by submitting reports of counterfeiting to Amazon (*id.* ¶¶ 38–39, 41–42, 88–89); Plaintiffs had conducted test purchases and knew that the products were not counterfeit, but chose to make false accusations to Amazon for the purpose of harming Defendant and suppressing competition (*id.* ¶¶ 51, 57, 68, 90–93, 95); Plaintiffs' false reports resulted in the suspension of Defendant's listing of Luxardo products, causing a loss of revenue and damage to Defendant's account (*id.* ¶¶ 54, 60–63, 69, 72, 94, 96–97).

These allegations are more than sufficient to state a claim for tortious interference with contract. *See, e.g.*, *AlphaCard Sys. LLC v. Fery LLC*, No. 19-20110 (MAS) (TJB), 2021 WL 2190901, at *4 (D.N.J. May 31, 2021) (denying motion to dismiss where "Plaintiffs made 'disparaging allegations to manufacturers that Fery's sales on the Amazon Marketplace were illegal'").

Plaintiffs first claim that Defendant "has not alleged anything that amounts to improper, malicious interference." (ECF No. 27-1, "Mot.," at 10.) This is obviously not true. To determine malicious interference, "the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game.'" *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001). As noted above, Defendant alleges that Plaintiffs submitted false accusations of counterfeiting to Amazon, ***knowing that Defendant's products were not counterfeit***. (Countercl. ¶¶ 29–32, 41–58.) The

Counterclaim details how these reports were submitted with specific intent to cause Amazon to suspend Defendant's ability to sell Luxardo Products, interfere with Defendant's business relationship with Amazon, unfairly suppress competition, unlawfully increase their profits, and defame Defendant. (*Id.*) "Accepting those allegations as true, the Court cannot find that such conduct was sanctioned by the rules of the game." *AlphaCard Sys.*, 2021 WL 2190901, at *4.

As discussed further below, Plaintiffs' actions were not "*privileged* efforts to use Amazon's existing notice of infringement system to assert valid, justified claims of infringement . . . ." (Mot. at 10 (emphasis in original).) Rather, as detailed in the Counterclaims, Plaintiffs made false counterfeiting representations to Amazon for the purpose of improperly controlling the pricing and distribution of their products on Amazon (Countercl. ¶ 68), not in connection with "valid, justified claims of infringement" or for any legitimate purpose. (Mot at 10.) The Counterclaims further allege that Plaintiffs purchased the products at issue, held them in their hands, knew that they were genuine, and yet proceeded to report to Amazon that these same products were fake, all for the sole purpose of harming their competition.[4] (Countercl. ¶¶ 29–32, 41–58, 68, 93, 95.) Plaintiffs' attempt to raise factual disputes is inappropriate at the pleadings stage. *See AlphaCard Sys.*, 2021 WL 2190901, at

---

[4] There is no allegation to suggest that there have **ever** been counterfeit Luxardo Products in the marketplace.

*4; *Salon Supply Store, LLC v. Creative Nail Design, Inc.*, No. 14-CV-01083-BAS(RBB), 2015 WL 11438492, at *8 (S.D. Cal. June 19, 2015) ("Here, Plaintiff has alleged Defendants had no good faith belief basis for requesting the takedown" and "the Court cannot determine the defense of justification" at the pleading stage).

Finally, Plaintiffs assert that Defendant "has not alleged a loss or breach of its 'contract' with Amazon as a result of the allegedly improper interference." (Mot. at 10.) Plaintiffs are just burying their heads in the sand. The Counterclaims allege that Defendant "was damaged by suspension of these listings by losing revenue related to LUXARDO brand cherry products." (Countercl. ¶ 97.) Indeed, there are a dozen factual allegations (under the heading "Harm to Counterclaimant"), detailing Defendant's losses. These losses, which are ignored in the Motion, are more than sufficient at the pleading stage. *See AlphaCard Sys.*, 2021 WL 2190901, at *4 (allegations that Plaintiffs "harmed Fery both by reducing the number and variety of products it could offer its customers and by disparaging customers from dealing with Fery," and as "a result of those actions, Fery has been caused great economic harm" sufficient to plead economic damage at the pleading stage).[5]

---

[5] In any event, "it [is] prudent to 'await the development of the record' before dismissing a tortious interference claim for failing to allege damages." *Id.* (internal modifications omitted) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 47 (N.J. 1989)).

### 2.   Defendant Has Stated a Claim for Tortious Interference with Business Relations

Plaintiffs' arguments relating to business relations interference suffer from the same defects—they ignore the allegations.   To prevail on a claim for tortious interference with business relations, there must be: "(1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference." *Trans USA Prod., Inc. v. Howard Berger Co., Inc.*, No. 07-cv-5924, 2008 WL 3154753, at *8 (D.N.J. Aug. 4, 2008) (internal quotation omitted).

Plaintiffs concede that Defendant has alleged each of these elements, with the exception of element (3).  Plaintiffs assert—without citation—that "there was no wrongful activity by Plaintiffs" because "Plaintiffs have legitimate interests in protecting their business from unfair competition, which interests were served by submitting notices to Amazon to address [Defendant's] unfairly promoted and materially different gray market goods." (Mot. at 11.)  This is not what is alleged in the Counterclaims and, as discovery will show, not what happened.

Plaintiffs are alleged to have knowingly submitted reports to Amazon that Defendant was selling "counterfeits" (i.e., fake products) because they knew it

would cause Amazon to remove Defendant from the marketplace.  A copy of Plaintiffs' actual submission to Amazon is reproduced in the Counterclaims at Paragraph 47—as can be plainly seen, Plaintiffs elected to make a claim of counterfeiting ("Infringement Type: Counterfeit") because they knew that it would cause the most damage.  This is most certainly "wrongful activity."

Plaintiffs concede that, while they may have "acted to increase their profits and to suppress competition," Plaintiffs argue that this "conduct still falls outside the ambit of malicious, extreme, unfair, or egregious behavior."  (Mot. at 12.)  As explained above, Plaintiffs' conduct went far beyond the "rules of the game." *AlphaCard Sys.*, 2021 WL 2190901, at *4.  Defendant reasonably expected *fair* competition on the Amazon marketplace; instead, Plaintiffs' "complaints to Amazon were false, were made maliciously and with the intent to interfere with [Defendant's] business relationship with Amazon."  (Countercl. ¶ 96.)

Plaintiffs' attempt to escape liability for their admittedly anti-competitive conduct should be denied.  *See Salon Supply Store*, 2015 WL 11438492, at *1, *8–9 (denying motion to dismiss claims for intentional interference where the defendant filed claims with eBay to report infringement violations by the plaintiff resulting in the removal of four of the plaintiff's listing from the online marketplace); *Corning Inc. v. SRU Biosystems, LLC*, 292 F. Supp. 2d 583, 585–86 (D. Del. 2003) ("[a]pplying the notice pleading standard, the Court concludes that the allegations

pled . . . are sufficient, at this juncture, to avoid dismissal on the claim that [plaintiff] may not have filed [its complaint] in good faith").

## B.   Defendant Has Stated a Claim for Defamation

Plaintiffs argue that Defendant's defamation claim fails because: (1) "the statements at issue are privileged and thus cannot amount to defamation"; and (2) "the gist of the statements made to Amazon were true[.]" (Mot. at 13.)

Plaintiffs' "privilege" argument is addressed below. (*See* § IV.C.)

Plaintiffs also argue that their statements that Defendant "was selling infringing products not authorized for sale in the United States market" were "substantially true." (Mot. at 13.) As discussed, there is no support in the pleadings for this argument. Defendant alleges—and demonstrates—that Plaintiffs reported that Defendant was selling counterfeits despite knowing that these statements were false. (*See, e.g.*, Countercl. ¶¶ 47–53.)

A statement asserting that a vendor is distributing counterfeit goods is *per se* defamatory. *See Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11 CIV. 5349 LAK, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011) ("Accusations that plaintiff sold 'counterfeit goods,' whether made orally or in writing, would be defamatory *per se*."); *El-Ghazzawy v. Berthiaume*, 708 F. Supp. 2d 874, 887 (D. Minn. 2010), *aff'd*, 636 F.3d 452 (8th Cir. 2011) ("[T]he Court finds that the statement accusing El-Ghazzawy of selling counterfeit watches constitutes defamation *per se*."). And,

contrary to Plaintiffs' assertion that it has not alleged "criminal" conduct (*see* Mot. at 12), "the trafficking of counterfeit goods is also considered a crime." *El-Ghazzawy*, 708 F. Supp. 2d at 886.

Whether a given statement is true is a question of fact, not a matter of law, that cannot be decided in the context of a motion to dismiss.  Discovery will show that Plaintiffs' assertion that it was ***merely*** reporting to Amazon that Defendant was selling products that were "not authorized" (*see* Mot. at 13) is wrong.  Amazon clearly and unambiguously cautions trademark owners that Amazon will ***not*** be involved in the enforcement of authorized distribution agreements—and Amazon's reporting tools may not be used for this purpose—because "violations of such agreements do not constitute intellectual property rights infringement."[6]  Plaintiffs' ***admitted violation of Amazon's policies*** is not a defense to the defamation claim alleged here.

Defendant has sufficiently alleged a claim for defamation, and Plaintiffs have only managed to further establish their liability.  *See Wilco Trading LLC v. Shabat*, No. 8:20-CV-579-TPB-JSS, 2021 WL 1146634, at *8 (M.D. Fla. Mar. 8, 2021) ("Plaintiff sufficiently alleges that Defendants committed defamation *per se* by making false complaints to Amazon that Plaintiff was selling counterfeit goods."), *adopted*, 2021 WL 1140097 (M.D. Fla. Mar. 25, 2021).

---

[6] https://www.amazon.com/report/infringement.

### C.     Plaintiffs' False Reports to Amazon Are Not Privileged or Protected

Plaintiffs also argue that their actions cannot constitute tortious interference or defamation because their complaints to Amazon are protected by the litigation privilege and common-interest privilege.

As an initial matter, both of these are *affirmative defenses* that are not typically amenable to determination at the pleading stage. *JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, No. 18-5221 (ES) (SCM), 2019 WL 1951123, at *7 (D.N.J. May 2, 2019) ("[C]ontrolling New Jersey law continues to hold that privilege, such as the absolute litigation privilege, fair-report privilege, and the common interest qualified privilege, is an affirmative defense."). Plaintiffs "have the burden of establishing that the existence of these privileges is 'apparent from the face of the complaint.'" *Id.* at *8. However, the Motion does not cite the pleadings and, instead, bases the privilege argument on new and disputed factual assertions.

#### 1.     The Litigation Privilege Is Inapplicable

The litigation privilege under New Jersey law applies to communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995). "Whether a defendant is entitled to the privilege is a question of law." *Id.*

14

Plaintiffs do not (and cannot) meaningfully address any of these elements. "Considering it is [Plaintiffs'] burden to prove that the privilege applies, and that [they] completely eschew[] any analysis of [each of] these requirements, [the Court] cannot conclude that [Defendant's] defamation claim is barred by the litigation privilege at this time." *Bello v. United Pan Am Fin. Corp*., No. CV 19-9118 (RBK/KMW), 2021 WL 2549243, at *3 (D.N.J. June 22, 2021).

Most notably, there was ***no threatened or actual litigation pending*** at the time the statements at issue were made to Amazon. (Countercl. ¶¶ 47, 54.)  Thus, if Plaintiffs ultimately raise this defense, it will fail. *See JNL Mgmt.*, 2019 WL 1951123, at *10  ("Defendants cannot show the application of this privilege because . . . at the time Drinker Defendants made the statement none of the parties contemplated litigation[.]"); *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2007 WL 4554208, at *21 n.13 (D.N.J. Dec. 21, 2007) (litigation privilege did not apply to pre-litigation communications, even where "the relationship between the parties is contentious or adversarial"), *aff'd*, 552 F. App'x 110 (3d Cir. 2014); *Source Entm't Grp. v. Baldonado & Assocs., P.C.*, No. 06-2706, 2007 WL 1580157, at *7 (D.N.J. May 31, 2007) (litigation privilege not applicable because there was no litigation pending).

Plaintiffs broadly assert that "[t]his Court and others have held that the Amazon notice and takedown procedures qualify as quasi-litigation procedures to

15

which the litigation privilege applies." (Mot. at 8.) But the only New Jersey case cited, *TD Bank, N.A. v. Hill*, does not support this statement and its holding is plainly misrepresented. In *TD Bank*, "TD Bank filed suit against Mr. Hill for copyright infringement" and, ***after filing suit***, notified various entities of the claim. *TD Bank, N.A. v. Hill*, No. CIV. 12-7188 RBK/JS, 2014 WL 413525, at *6 (D.N.J. Feb. 3, 2014).[7] That is not the case here.

Courts in this District have refused to shield similar communications from tort claims, particularly without a factual record. *See Ontel Prods. Corp. v. Zuru Ltd.*, No. 17-cv-3658 (PGS)(LHG), 2017 WL 4444198, at *3 (D.N.J. Oct. 4, 2017) (denying motion to dismiss tortious interference claim where "Defendants have failed to demonstrate how their communications to third-party retailers, regarding intellectual property rights litigation is akin to a doctrine that protects conduct between competitors when petitioning government"); *see also Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 118 F. Supp. 3d 646, 657 (D.N.J. 2015) (noting that determining "whether Otsuka undertook this action for an improper and anticompetitive purpose . . . require[s] inquiry into issues of fact, which cannot be resolved in the context of a motion to dismiss, and prior to discovery"); *Shionogi*

---

[7] The *TP-Link* case cited by Plaintiffs was based on the application of California's Anti-SLAPP statute, which, by statute, provides for adjudication of such claims at the pleading stage. *See TP Link USA Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 WL 3063956, at *4, *8 (C.D. Cal. Mar. 23, 2020). Plaintiffs do not explain how that statutory scheme governs this case.

*Pharma., Inc. v. Mylan, Inc.*, No. 10-1077, 2011 WL 3860680, at *6 (D. Del. Aug. 31, 2011) (declining to resolve the question of immunity from suit upon a motion to dismiss).

Further, the litigation "[i]mmunity does not extend to statements published outside of a judicial proceeding to persons not connected with it." *Williams v. Kenney*, 877 A.2d 277, 287 (N.J. Super. App. Div. 2005) (internal quotation omitted). Plaintiffs' false and defamatory reports to Amazon, months before this litigation commenced, "are simply not . . . protected by the litigation privilege." *JNL Mgmt.*, 2019 WL 1951123, at *10.

### 2. The Common Interest Privilege Is Also Inapplicable

Under New Jersey law, a common interest qualified privilege applies to communications "made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty . . . if [the communication is] made to a person having a corresponding interest or duty . . . ." *Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp.*, 642 F. Supp. 2d 391, 400 (D.N.J. 2009) (quoting *Williams v. Bell Tel. Labs., Inc.*, 623 A.2d 234, 240 (N.J. 1993)). To determine if this qualified privilege applies, the Court must examine three elements: "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by

the recipient." *Prof'l Recovery Servs.*, 642 F. Supp. 2d at 401 (citing *Bainhauer v. Manoukian*, 520 A.2d 1154, 1170 (N.J. Super. Ct. App. Div. 1987)).

Here too, Plaintiffs do not attempt how each of these elements is conclusively shown by the pleadings alone.  For example, the notion that Plaintiffs have a "common interest" with Amazon finds no support in the pleadings and makes little sense.  As noted above, Plaintiffs, if anything, are violating Amazon's policies and abusing its infringing reporting tools.  (*See* § IV.B.)[8]  Amazon seeks to encourage competition, to provide consumers with the best price—Plaintiffs, by their own admission, have conspired to "suppress competition" through private distribution agreements and false complaints.  (Mot. at 12.)

"Moreover, even assuming that the privilege was apparent on the face of the Complaint, the Court would still be unable to [grant a motion to] dismiss on this basis." *JNL Mgmt.*, 2019 WL 1951123, at *9.  This is because the common interest privilege is not absolute and may be lost by a showing that the defendant abused the privilege, e.g., where "the publisher knows the statement is false or the publisher acts in reckless disregard of its truth or falsity." *See Bell Tel. Labs.*, 623 A.2d at

---

[8] There are more than 500,000 brands enrolled in Amazon's Brand Registry, the software tool through which Plaintiffs submitted the reports at issue. https://brandservices.amazon.com/.  Amazon would not agree that—as a matter of law—it has a common interest with one of these brands.

240.  And, "whether the qualified privilege was abused is a question for the jury to decide."  *JNL Mgmt.*, 2019 WL 1951123, at \*9.

### D.   Plaintiffs' Attempt to Strike the "First Sale" Defense Is Unsupported

Plaintiffs move to "strike" Defendant's reference to the "first sale" doctrine, arguing that "the first sale doctrine is decidedly *not* a defense to a charge asserting unfair competition based on the sale of materially different gray market goods[.]" (Mot. at 13 (emphasis in original).)   Plaintiffs' argument is based on a misunderstanding of a passage from a legal treatise (not Third Circuit law) and would require resolving disputed facts in Plaintiffs' favor.

"According to the 'first sale' or 'exhaustion' doctrine, a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form."  *Iberia Foods*, 150 F.3d at 301 n.4.  There are exceptions to the doctrine, including the "material difference" exception that Plaintiffs rely upon in their Complaint.[9]  (*See* Compl. ¶ 41.)

---

[9] Not all differences are material.  Some differences between products "prove so minimal that consumers who purchase the alleged infringer's goods get precisely what they believed they were purchasing [and] consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales." *Iberia Foods*, 150 F.3d at 303 (quotations and citations omitted).

*Iberia Foods* "is the Third Circuit's defining case on the exception to the first sale doctrine because of 'material differences' of unauthorized gray goods." *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. CV 15-05246 (RBK/JS), 2019 WL 7288946, at *5 (D.N.J. Dec. 30, 2019). There, Iberia owned the Mistolin® trademark and sold Mistolin® products in the U.S. *Iberia Foods*, 150 F.3d at 300. Iberia also had the Mistolin® goods manufactured under license by a Puerto Rican entity for sale in Puerto Rico. *Id.* at 301.

Defendant Rol-Rom bought products bearing the Mistolin® mark on the open market in Puerto Rico and sold them in the U.S. in direct competition with Iberia. *Id*. at 300. Iberia sued, arguing Rol-Rom's sales of its gray goods in the U.S. market was a trademark violation because the Puerto Rican-made goods were materially different than the U.S. authorized goods and therefore not "genuine" Mistolin® products. *Id*. In response, Rol-Rom argued that the first sale doctrine exhausted Iberia's IP rights and there were no material differences between the goods. The district court granted summary judgment in favor of Iberia. On appeal, the Third Circuit reversed, finding Rol-Rom's gray market products were not "materially different" from Iberia's and, as such, there was no Lanham Act violation. *Id*. at 302, 306.

Plaintiffs' contention that the first sale doctrine is somehow irrelevant here is misplaced. The passage from the McCarthy's treatise relied upon by Plaintiffs

merely reiterates the principle that the "materially different" goods can be excepted from the first sale doctrine—it does not abrogate *Iberia Foods*.

Furthermore, whether the goods at issue here are: (1) unauthorized, (2) materially different, or (3) even properly classified as gray goods, are all ***factual questions*** that cannot be addressed at the pleading stage.  There are just some of the elements that Plaintiffs must prove to sidestep the first sale doctrine. Put differently, Plaintiffs' entire case hinges upon proving an ***exception to the first sale doctrine***. Plaintiffs' argument here that the "first sale doctrine" is "an entirely irrelevant issue" that should be stricken "at an early stage" (Mot. at 14), is illogical and unsupported.[10] *Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *8 (E.D. Pa. Mar. 6, 2013) (denying motion to strike because first sale defense "is a question of fact to be determined during discovery and/or trial"); *Microsoft Corp. v. Worth*, No. CIV A 306-CV-2213-G, 2007 WL 1975574, at *3 (N.D. Tex. July 5, 2007) (denying motion to strike because "whether the first sale doctrine is available as an affirmative defense rests on disputed factual issues").

---

[10] "Although the first sale doctrine is widely recognized, there is no consistent treatment of it as either identifying required elements of a claim or as setting forth an affirmative defense." *Food Scis. Corp. v. Nagler*, No. CIV.09-1798 (JBS), 2010 WL 1186203, at *7 (D.N.J. Mar. 22, 2010).  Because the law is unsettled, Defendant includes it as an affirmative defense. What we know for certain from *Iberia Foods* is that, in all events, the burden of persuasion is on Plaintiff to prove a material difference between the U.S. and the allegedly unauthorized goods. *See Iberia Foods*, 150 F.3d at 300–04 ("[Plaintiff] must establish that the products sold by the alleged infringer are not 'genuine.'").

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiffs'

Motion be denied.


                                           Respectfully submitted,

Dated: December 20, 2021                    By: *s/ Mark Berkowitz*

                                            TARTER KRINSKY & DROGIN LLP
                                            Mark Berkowitz (Bar No. 232472017)
                                            1350 Broadway
                                            New York, NY 10018
                                            Tel.:   (212) 216-8000
                                            Fax:   (212) 216-8001
                                            E-mail: mberkowitz@tarterkrinsky.com

                                            ***Attorneys for Defendant LY Berditchev
                                            Corp.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2021, the foregoing document entitled

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' PARTIAL MOTION TO**

**DISMISS CERTAIN COUNTERCLAIMS AND STRIKE AN AFFIRMATIVE**

**DEFENSE** was filed with the Clerk of the Court by using the CM/ECF system,

which will cause such document to be served on all counsel of record identified

below via transmission of Notice of Electronic Filing generated by CM/ECF:

> Allison Altersohn
> Kathleen McCarthy
> KING & SPALDING LLP
> 1185 Avenue of the Americas
> New York, NY 10036
> Tel.:    (212) 556-2100
> E-mail:  aaltersohn@kslaw.com
>           kmccarthy@kslaw.com
>
> David S. Gold
> Elizabeth A. Carbone
> COLE SCHOTZ P.C.
> 25 Main Street
> Court Plaza North
> Hackensack, NJ 07601
> Tel.:    (201) 489-3000
> E-mail:  dgold@coleschotz.com
>           ecarbone@coleschotz.com

> *s/ Mark Berkowitz*