<u>Not for Publication</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOTALING & CO., LLC and SANNITI LLC,<br>*Plaintiffs,*<br>v.<br>LY BERDITCHEV CORP.,<br>*Defendant.* | Civil Action No. 20-cv-16366<br><br><u>OPINION</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This case concerns Defendant's alleged unlawful marketing and sale of "LUXARDO ORIGINAL MARASCHINO CHERRIES" (the "Brand Cherries"). Presently before the Court is Plaintiffs' motion to dismiss certain counterclaims and strike an affirmative defense. D.E. 27. The Court reviewed the parties' submissions[1] made in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Plaintiffs' motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**[2]

Defendant and Counterclaimant LY Berditchev Corp. ("LYB") is a New York corporation that resells consumer products through various channels, including through an Amazon storefront.

---

[1] Plaintiffs' brief in support of its motion to dismiss (D.E. 27-1) will be referred to as "Br."; Defendant's opposition brief (D.E. 31) will be referred to as "Opp."; and Plaintiffs' reply brief (D.E. 32) will be referred to as "Reply."

[2] The facts are taken from Defendant's Amended Counterclaim ("ACC"), D.E. 24 at 9-34, which "the Court accepts . . . as true and draws all inferences in the light most favorable to the non-moving party." *Duke Univ. v. Akorn, Inc.*, No. 18-14035, 2019 WL 4410284, at *1 (D.N.J. Sept. 16, 2019) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)).

ACC ¶¶ 1, 13. Plaintiff and Counterclaim Defendant Hotaling & Co., LLC ("Hotaling") is a California limited liability company that imports Brand Cherries into the United States. *Id.* ¶¶ 2, 9. Plaintiff and Counterclaim Defendant Sanniti LLC ("Sanniti") is an authorized distributor of Brand Cherries in the United States and sells Brand Cherries through an Amazon storefront. *Id.* ¶¶ 3, 10.

LYB acquires consumer products and resells them at a profit. *Id.* ¶ 23. A significant portion of its business is derived from selling products through its Amazon storefront. *Id.* ¶ 22. LYB alleges on information and belief that Hotaling and Sanniti made false complaints of intellectual property infringement and defamatory statements to prevent LYB from selling genuine Brand Cherries on Amazon. *Id.* ¶¶ 30-31. Specifically, Hotaling and Sanniti filed complaints with Amazon alleging that LYB was selling counterfeit Brand Cherries. *Id.* ¶ 41. LYB continues that, on information and belief, "the purpose of these false complaints was to damage LYB's reputation and goodwill, such that Amazon would suspend or terminate its relationship with LYB." *Id.* ¶ 32. According to LYB, Hotaling and Sanniti have no legitimate intellectual property claims because LYB sells only genuine products through its Amazon storefront, *id.* ¶ 33, and the Brand Cherries sold by LYB are genuine products manufactured and distributed by Girolamo Luxardo S.P.A. ("GLS"), *id.* ¶¶ 49-50. LYB adds that Plaintiffs' complaints were made maliciously and with the intent to interfere with LYB's business relationship with Amazon. *Id.* ¶ 96. As a result of Hotaling and Sanniti's complaints to Amazon, LYB's listings of Brand Cherries were suspended, resulting in loss of revenue. *Id.* ¶ 60.

On November 17, 2020, Plaintiffs filed a Complaint against LYB asserting federal and common law unfair competition claims concerning the marketing and sale of Brand Cherries. D.E. 1. Defendant filed an Answer, Affirmative Defenses, and Counterclaim. D.E. 18. Defendant

subsequently filed an Amended Answer, Affirmative Defenses, and Counterclaim, asserting various affirmative defenses and counterclaims for declaratory judgment, tortious interference with contract and business relations, defamation, and cancellation. D.E. 24. Plaintiffs then filed the present motion to dismiss Counterclaim II for tortious interference and Counterclaim III for defamation. D.E. 27. Plaintiffs also seek to strike LYB's third affirmative defense relating to the exhaustion or first sale doctrine. *Id.*

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Counterclaims

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012). Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court will, however, accept the counterclaim's well-pleaded facts as true. *Fowler*, 578 F.3d at 210. Moreover, a district court must draw all reasonable inferences from the well-pleaded facts in favor of the counterclaimant. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

On a Rule 12(b)(6) motion to dismiss, a district court may not rely on matters extraneous to the pleading sought to be dismissed. Fed. R. Civ. P. 12(d). A motion to dismiss a counterclaim

3

must be decided "on the face of the counterclaim." *Lukoil N. Am. LLC v. Turnersville Petroleum Inc.*, 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015). However, in certain circumstances, a court may also consider undisputed and authentic exhibits as well as matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

### B. Motion to Strike Affirmative Defense

Rule 12(f) of the Federal Rules of Civil Procedure sets forth two standards for striking matter from a pleading: (1) "an insufficient defense," or (2) "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An affirmative defense is insufficient if 'it is not recognized as a defense to the cause of action.'" *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J.1993)). Thus, a motion to strike an affirmative defense "will only be granted 'when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading.'" *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994) (quoting *Glenside West Corp. v. Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J.1991)). "As a general matter, motions to strike under Rule 12(f) are highly disfavored." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (citing *F.T.C.*, 2011 WL 883202, at *1).

### III. ANALYSIS

#### A. Privilege

Plaintiffs argue that they are immune from liability for statements made to Amazon relating to LYB's allegedly unlawful conduct because such statements are shielded by privilege. Br. at 7-9. A privilege is an affirmative defense. *See JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, Civ. No. 18-5221, 2019 WL 1951123, at *7 (D.N.J. May 2, 2019). The party raising privilege as

4

an affirmative defense bears the burden of establishing the existence of privilege from the face of the pleading. *Id.* at *8 (quoting *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 209 (D.N.J. 2011)).

Plaintiffs first contend that the notices they submitted to Amazon regarding LYB's sale of Brand Cherries are shielded by litigation privilege. Br. at 7-8. Under New Jersey law,[3] the litigation privilege extends to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995). Here, Plaintiffs argue that their notice and takedown communications with Amazon qualify as communications made in quasi-litigation procedures and are therefore privileged. In support of their position, Plaintiffs cite to *TP Link USA Corp. v. Careful Shopper, LLC*, Civ. No. 19-82, 2020 WL 3063956 (C.D. Cal. Mar. 23, 2020) and *TD Bank, N.A. v. Hill*, Civ. No. 12-7188, 2014 WL 413525, at *6-7 (D.N.J. Feb. 3, 2014). But neither case is analogous to the situation here. *TP Link*, an unpublished opinion from the Central District of California, held that certain complaints submitted to Amazon fell within the protection of California's Anti-SLAPP statute. *TP Link*, 2020 WL 3063956, at *6-7. However, as LYB notes, Plaintiffs do not explain how that statute is relevant to the communications at issue here. *See* Opp. at 16 n.7. In *TD Bank*, the plaintiff filed suit against the defendant for copyright infringement and notified online retailers to this alleged infringement *after* commencing suit. *TD Bank*, 2014 WL

---

[3] The parties appear to assume that New Jersey law applies. Seeing no clear reason to deviate from this assumption, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

5

413525, at *6.  Thus, "TD Bank's communications were made in connection with judicial proceeding [sic]."  *Id.*[4]  Here, conversely, Hotaling and Sanniti submitted complaints to Amazon *prior* to commencing the present litigation.  *See* ACC ¶ 54 (listing two complaints made on September 30, 2020 and October 15, 2020).

The litigation privilege does not protect communications like Plaintiffs' notice and takedown complaints "not sent in connection with a judicial proceeding and not intended to achieve the objects of any litigation."  *Source Ent. Grp. v. Baldonado & Assocs., P.C.*, Civ. No. 06-2706, 2007 WL 1580157, at *7 (D.N.J. May 31, 2007).  While Plaintiffs point to pre-suit correspondence with LYB as evidence that they were contemplating litigation at the time the statements at issue were made, the Court cannot consider the pre-suit correspondence at this stage because it goes beyond the face of the pleading.  Nor does the timing of Plaintiffs' Complaint, which was filed approximately one month after LYB received a notice from Amazon resulting from Plaintiffs' notice and takedown complaints, *compare* ACC ¶ 47 *with* D.E. 1, demonstrate that the communications are connected to the current judicial proceeding.  *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, Civ. No. 03-1026, 2007 WL 4554208, at *21 (D.N.J. Dec. 21, 2007) (declining to extend the litigation privilege "to all situations where the relationship between the parties is contentious or adversarial, and *it is possible* that one of the parties will commence an

---

[4] Plaintiffs argue in their reply that the privilege analysis does not change whether the takedown notices were sent before or after litigation commenced, citing a later Third Circuit decision in the *TD Bank* matter which noted that TD Bank sent takedown demands before filing suit.  Reply at 5 (citing *TD Bank N.A. v. Hill*, 928 F.3d 259, 267 (3d Cir. 2019)).  However, it appears that the takedown demands were in fact sent one day after TD Bank commenced litigation.  In any event, the Third Circuit opinion does not discuss the issue of litigation privilege and therefore fails to support Plaintiffs' contention.

action in the future") (emphasis added), *aff'd*, 552 F. App'x 110 (3d Cir. 2014). Thus, the Court finds that Plaintiffs have not met their burden at this stage.[5]

Plaintiffs also assert that their statements are shielded by common interest privilege. Br. at 8-9. Under New Jersey law, the common interest privilege protects communications made "'bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable.'" *Pro. Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*, 642 F. Supp. 2d 391, 400 (D.N.J. 2009) (quoting *Williams v. Bell Tel. Lab. Inc.*, 132 N.J. 109, 121 (1993)). To determine whether a communication is entitled to the common interest privilege, the Court must look to "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient." *Id.* at 401 (citing *Bainhauer v. Manoukian*, 215 N.J. Super. 9, 37 (App. Div. 1987)). Here, Plaintiffs proclaim that "Amazon and sellers like Plaintiffs share a common interest," of ensuring that infringing products are not sold on the Amazon platform. Br. at 9. However, Plaintiffs fail to cite to any authority reflecting that the common

---

[5] An unpublished Northern District of Illinois court opinion, issued after the briefing, found that statements made to Amazon during the notice and takedown period prior to the commencement of a judicial proceeding were privileged as "communications preliminary to a proposed judicial proceeding" because "the notice and takedown period may result in litigation if either party disagrees with Amazon's [sic]." *Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, at *3 (N.D. Ill. Mar. 11, 2022). However, the Court is not aware of any court within the Third Circuit finding that litigation privilege applies under similar circumstances and declines to follow the holding of *Sunny Factory*. If every communication made to Amazon pursuant to the notice and takedown procedures were entitled to litigation privilege regardless of whether they were made during the pendency of litigation, potential litigants would have ample opportunity to engage in gamesmanship and abuse the notice and takedown process. *See Hawkins v. Harris*, 141 N.J. 207, 221 (1995) ("The absolute privilege does not extend to statements made in situations for which there are no safeguards against abuse.") (internal quotation omitted).

interest privilege applies in such a scenario. Nor do Plaintiffs demonstrate how the elements of the privilege are met from the face of LYB's Amended Counterclaim. Accordingly, Plaintiffs have not met their burden of establishing the existence of the common interest privilege at this stage.

### B. Tortious Interference with Contract

LYB brings a counterclaim for tortious interference with contract, alleging that Plaintiffs intentionally interfered with its contractual relationship with Amazon by falsely claiming that LYB was selling counterfeit or otherwise infringing products. ACC ¶ 84-99. LYB claims that this conduct caused "disruption" of its contract with Amazon and caused its Brand Cherry listings to be suspended, resulting in loss of revenue. *Id.* ¶¶ 90, 94, 97. To state a claim for tortious interference with contract, a plaintiff[6] must allege "(1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-52 (1989)).

Plaintiffs argue that LYB has not alleged that Plaintiffs' conduct amounted to improper, malicious interference. Br. at 10. Instead, according to Plaintiffs, LYB points to Plaintiffs' use of Amazon's notice and takedown procedures "to assert valid, justified claims of infringement." *Id.* They continue that LYB has not alleged a loss or breach of its contract with Amazon as a result of the allegedly improper interference; rather, LYB claims that Amazon suspended certain listings, which is consistent with Amazon's policy on infringement claims according to LYB's pleading.

---

[6] While LYB is a counterclaimant rather than a plaintiff, the Court uses the general vernacular in its discussion of pleading the elements of a claim, as most opinions contemplate the typical scenario of the plaintiff as the party pleading a claim.

*Id* (citing ACC ¶¶ 36-37). Defendant counters that they have adequately pled malicious interference by alleging that Plaintiffs made false counterfeiting representations to Amazon for the purpose of harming competition and that Plaintiffs' attempt to raise factual disputes regarding the validity of those statements is inappropriate at this stage. Opp. at 7-8. LYB also maintains that it has alleged a loss or breach of its contract with Amazon because the Amended Counterclaim states that LYB "'was damaged by suspension of these listings by losing revenue related to LUXARDO brand cherry products.'" Opp. at 9 (citing ACC ¶ 97).

The Court agrees with LYB that factual disputes regarding the validity of Plaintiffs' complaints to Amazon are inappropriate for resolution at the pleadings stage. *See AlphaCard Sys. LLC v. Fery LLC*, Civ. No. 19-20110, 2021 WL 2190901, at *4 (D.N.J. May 31, 2021) (finding that the defendant had sufficiently alleged malice based on its claim that the plaintiffs made disparaging allegations to manufacturers about the legality of the defendant's sales on Amazon and noting that whether the defendant placed fake reviews of its own products remained a question of fact improper for consideration at the pleading stage).

However, LYB has not adequately alleged that Plaintiffs' conduct resulted in the loss or breach of its contract with Amazon. It merely claims that Plaintiffs caused "disruption" of its contract, ACC ¶ 90, but does not detail the contractual provisions that were impacted or the resulting breach or loss. Without more, LYB's vague allegation of contract "disruption" is insufficient. *See loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 236-37 (D.N.J. 2019) (finding that the plaintiff's "broad allegation" that certain defendants had breached their agreements by soliciting unidentified employees at unidentified times was too vague to set forth a specific breach of contract in support of a tortious interference claim). Nor does LYB allege that it lost its contract with Amazon as a result of Plaintiffs' notice and takedown complaints.

9

Further, Defendant's contention that it has adequately pled the loss or breach of contract element by alleging loss of revenue caused by suspension of its listings conflates the third and fourth elements of the claim. Loss of revenue resulting from suspension of LYB's Brand Cherry listings may be sufficient to plead "damages resulting from [Plaintiffs'] interference," but it does not necessarily show "loss or breach of a contract." *DiGiorgio Corp.*, 230 F. Supp. 2d at 558 (listing elements of a tortious interference with contract claim).[7] Because LYB has not adequately pled breach or loss of its contract with Amazon, Plaintiffs' motion to dismiss LYB's counterclaim for tortious interference is granted. *See loanDepot.com*, 399 F. Supp. 3d at 236-37 (D.N.J. 2019) (dismissing tortious interference with contract claims because the allegations did not set forth a specific breach of contract).

### C. Tortious Interference with Business Relations

LYB also alleges that Plaintiffs tortiously interfered with its business relationship with Amazon. ACC ¶¶ 84-99. Under New Jersey law, a plaintiff must show the following:

> (1) the plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citing *Printing Mart-Morristown*, 116 N.J. 739 at 751-52).

---

[7] This finding is consistent with *AlphaCard Sys. LLC v. Fery LLC*, Civ. No. 19-20110, 2021 WL 2190901 (D.N.J. May 31, 2021), which LYB cites in support of its argument. The *AlphaCard* court found that the defendant had adequately plead economic damage by alleging that it suffered economic harm as a result of the plaintiff reducing the number and variety of products it could offer and disparaging the defendant's customers. *Id.* The finding addressed the damages element of the tortious interference claim rather than the requirement that the alleged interference resulted in breach or loss of a contract.

Hotaling and Sanniti argue that LYB's claim fails because they did not engage in any wrongful activity but rather submitted the complaints to serve their legitimate business interest of protecting themselves against unfair competition. Br. at 11-12. In support, Plaintiffs cite to various cases from other jurisdictions. *Id.* at 11. Plaintiffs continue that at best, LYB alleges that Hotaling and Sanniti acted to increase their profits and suppress competition, which does not amount to malicious behavior. *Id.* at 12. In response, LYB points to its allegations that Plaintiffs maliciously made false counterfeiting complaints to Amazon with the intent to interfere with LYB's business relationship with Amazon. Opp. at 11 (citing *AlphaCard Sys.*, 2021 WL 2190901, at *4).

LYB sufficiently states a claim for tortious interference with business relations. It alleges that "Hotaling and Sanniti's complaints to Amazon were false, were made maliciously and with the intent to interfere with LYB's business relationship with Amazon." ACC ¶ 96. LYB also alleges on information and belief that the purpose of these false complaints was to prevent LYB from selling genuine Brand Cherries on Amazon and to cause Amazon to suspend or terminate its relationship with LYB. *Id.* ¶¶ 31-32. These claims are supported by allegations that Hotaling imports Brand Cherries into the United States and Sanniti sells Brand Cherries through an Amazon storefront, *id.* ¶¶ 9-10, making Plaintiffs and LYB competitors. That Plaintiffs acted maliciously in submitting the complaints can further be inferred by LYB's allegation that Plaintiffs engaged in a coordinated effort to preclude certain third parties, including LYB, from reselling genuine Brand Cherries through online marketplaces by bringing false allegations of intellectual property infringement, *id.* ¶ 30. LYB plausibly alleges that Plaintiffs were wrongfully acting to suppress competition, as Plaintiffs themselves acknowledge. *See* Br. at 12 ("At best, [LYB] alleges that Plaintiffs acted to increase their profits and to suppress competition").

The Court does not find persuasive the cases cited by Plaintiffs. However, the Court does find instructive *AlphaCard Sys. LLC*, 2021 WL 2190901, in which another court in this District found that the defendant had adequately plead tortious interference with business relations under similar circumstances. There, the defendant alleged that the plaintiffs were seeking to limit competition in general, and with the defendant in particular, based in part on the plaintiffs' "disparaging allegations to manufacturers that [the defendant's] sales on the Amazon Marketplace were illegal." *Id.* at *1. The *AlphaCard* court found that the defendant had adequately pled malice by alleging that the plaintiffs made disparaging allegations about the legality of the defendant's sales because such conduct was not "sanctioned by the rules of the game." *Id.* at *4. Here, similarly, LYB has alleged that Plaintiffs submitted false complaints that LYB's Brand Cherries were counterfeit products to prevent it from selling genuine Brand Cherries on Amazon. Accepting LYB's allegations as true and construing the Amended Counterclaim in the light most favorable to LYB, the Court finds that LYB has sufficiently plead that Plaintiffs' conduct constituted wrongful or intentional interference.[8] Thus, LYB's tortious interference with business relations claim may proceed.

---

[8] Plaintiffs' opening brief did not discuss whether the other elements of a tortious interference with business relations claim were met, and LYB asserts that Plaintiffs therefore concede that LYB has alleged each of these elements. Opp. at 10. In their reply, Plaintiffs deny that they made such concessions and contend that the tortious interference claim "is also lacking in other elements, *e.g.*, allegations that [LYB] had any reasonable expectation of being able to sell unauthorized, Italian-labeled gray market products on the Amazon platform." Reply at 7. However, because Plaintiffs did not raise these arguments in their opening brief, the Court declines to consider them. *See Wilson v. Parker*, Civ. No. 18-2954, 2018 WL 6696783, at *5 (D.N.J. Dec. 20, 2018) (declining to entertain a new argument raised for the first time in a reply because "[i]t is axiomatic in federal practice that arguments raised for the first time in a reply brief should be disregarded").

### D. Defamation

Plaintiffs also move to dismiss LYB's counterclaim for defamation arising from their statements to Amazon that LYB was selling counterfeit Brand Cherries. Defamation requires a plaintiff to show that the defendant "(1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan*, 834 F. Supp. 2d at 204 (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 80 (App. Div. 2005)). As to the first element, "whether a statement is defamatory depends on 'its content, verifiability, and context.'" *Id.* at 204-05 (quoting *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 167 (1999)). A party cannot make a *prima facie* case of defamation if the contested statement is "essentially true." *Taylor v. Amcor Flexibles Inc.*, 669 F. Supp. 2d 501, 513 (D.N.J. 2009) (citing *Hill v. Evening News Co.*, 314 N.J. Super. 545 (App. Div. 1998)), *aff'd*, 507 F. App'x 231 (3d Cir. 2012). To satisfy the second element of a defamation claim, the complaint must "'plead facts sufficient to identify the defamer and the circumstances of publication.'" *Mangan*, 834 F. Supp. 2d at 206 (quoting *Printing Mart–Morristown*, 116 N.J. at 767). Finally, the third element requires a showing of actual malice where the victim is a public figure, and negligence where the victim is a private figure. *Id.* at 206 (citing *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 314 (App. Div. 2000); *Feggans v. Billington*, 291 N.J.Super. 382, 391 (App. Div. 1996)).

Plaintiffs argue that LYB fails to state a claim for defamation because "the statements at issue are privileged and thus cannot amount to defamation," and because "the gist of the statements made to Amazon were true," and thus not defamatory. Br. at 13. The Court disagrees with the argument as to privilege for the reasons stated above. Plaintiffs' second argument fares no better. The Court accepts as true LYB's claim that Hotaling and Sanniti made false statements that LYB was selling counterfeit Brand Cherries. *See Fowler*, 578 F.3d at 210. This claim is supported by

13

allegations that the Brand Cherry products sold by LYB "were, at all times and continue to be, authentic products bearing the name of the manufacturer," ACC ¶ 66, and that the Brand Cherry product identified as counterfeit in the October 15, 2020 complaint was genuine, *id.* ¶ 49. Whether the statements regarding LYB's Brand Cherries were substantially true, as Plaintiffs contend, is a question of fact not proper for resolution at the motion to dismiss stage. *See Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 476 (D.N.J. 1999) (declining to consider the defendants' argument that the allegedly defamatory statements were true and considering only the plaintiff's allegation that the statements were false because "this is a motion to dismiss, and not a summary judgment motion").[9] Thus, dismissal of LYB's defamation claim is unwarranted.

### E. First Sale Affirmative Defense

Plaintiffs allege that Defendant sold unauthorized Brand Cherries that are materially different from authorized Brand Cherries, and that "Defendant's unauthorized marketing and sale of Unauthorized Luxardo Brand Cherries infringes GLS's rights and constitutes unfair competition with GLS, Hotaling, Sanniti, and other authorized sellers..." Compl. ¶¶ 21, 26. LYB's third affirmative defense asserts that Plaintiffs' claims are barred by the first sale doctrine because the cherries sold by LYB are not materially different than the Brand Cherries authorized for sale in the United States by GLS, the owner of the LUXARDO mark. D.E. 24 at 8. Plaintiffs now move to strike this defense.

The first sale, or exhaustion, doctrine establishes that "a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form." *Iberia*

---

[9] *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, Civ. No. 15-05246, 2019 WL 7288946, at *8 (D.N.J. Dec. 30, 2019), which Plaintiffs cite in their reply brief, discusses the material differences doctrine and is unrelated to the merits of LYB's defamation claim.

*Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998).  However, the Third Circuit's "'material differences' jurisprudence [] excludes unauthorized gray goods from the first sale doctrine." *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, Civ. No. 15-05246, 2019 WL 7288946, at *8 (D.N.J. Dec. 30, 2019).  If the products sold by the alleged infringer and the trademark owner contain identical marks but are materially different, then "the alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement." *Iberia*, 150 F.3d at 299.  Conversely, "[i]f there are no material differences between the products sold, then the products offered by the alleged infringer are 'genuine,'" and the infringement claim must fail. *Id.* at 303.

      Hotaling and Sanniti claim that LYB's first sale defense fails as a matter of law because it is not a defense to a charge asserting unfair competition based on the sale of materially different gray market goods.  Br. at 13-14.  LYB counters that Plaintiffs misunderstand the first sale doctrine and that, further, whether the first sale doctrine applies here is a factual question that cannot be resolved at the motion to dismiss stage.  Opp. at 19-21.

      The Court finds that LYB's first sale doctrine defense cannot be struck at this juncture.  Plaintiffs' contention that the first sale doctrine is not a defense to an allegation of unfair competition based upon the sale of materially different gray market goods, Br. at 13, assumes that the cherries sold by LYB are indeed non-genuine goods.  However, whether the cherries sold by LYB were genuine Brand Cherries or counterfeit goods is a factual dispute at the heart of this matter.  *See*, *e.g.*, Complaint ¶ 1 ("This is an action for federal and common law unfair competition arising from Defendant's unlawful importation, marketing, and/or sale of 'gray market' LUXARDO brand maraschino cherries…"); ACC ¶ 76 ("Hotaling and Sanniti, working in concert, have submitted multiple complaints to Amazon that falsely stated that LYB sold counterfeit

15

LUXARDO brand cherry products and infringed, *inter alia*, the LUXARDO Registration."). Thus, whether the first sale doctrine applies here is a factual inquiry not appropriate for a motion to dismiss. *See Malibu Media, LLC v. Does 1*, Civ. No. 12-2078, 2013 WL 1702549, at *8 (E.D. Pa. Mar. 6, 2013) (denying motion to strike because whether the lawsuit was based on the unauthorized reproduction and distribution of unlawful copies of the plaintiff's movies, and thus whether the first sale defense was available to the defendants, was "a question of fact to be determined during discovery and/or trial"); *see also Microsoft Corp. v. Worth*, Civ. No. 06-2213, 2007 WL 1975574, at *3 (N.D. Tex. July 5, 2007) (denying motion to strike because "whether the first sale doctrine is available as an affirmative defense rests on disputed factual issues"). Moreover, the Court is mindful of the admonition that "motions to strike under Rule 12(f) are highly disfavored." *Thompson*, 2018 WL 4604310, at *2 (internal citation omitted). Accordingly, the Court denies Plaintiffs' motion to strike LYB's third affirmative defense.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss Counterclaims II and II and to strike LYB's third affirmative defense is **GRANTED in part** and **DENIED in part.** An appropriate Order accompanies this Opinion.

Dated: April 18, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　John Michael Vazquez, U.S.D.J.